#31101-aff in pt & vacate in pt-MES
**2026 S.D. 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

ESTATE OF PAUL O'FARRELL,
individually; and as a beneficiary of
the family trust; SKYLINE CATTLE
COMPANY, a South Dakota corporation,                Plaintiffs and Appellants,

THE ESTATE OF VICTORIA
O'FARRELL & VOR, INC., a
South Dakota corporation,                           Plaintiffs and Appellees,

          v.

GRAND VALLEY HUTTERIAN
BRETHREN, INC., a South Dakota
corporation,                                        Defendant and Appellee,

KELLY O'FARRELL, an individual;
and the RAYMOND AND VICTORIA
O'FARRELL LIVING TRUST, a South
Dakota Trust,                                       Defendants.

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
GRANT COUNTY, SOUTH DAKOTA

THE HONORABLE PATRICK T. PARDY
Judge

CONSIDERED ON BRIEFS
MARCH 17, 2026
OPINION FILED **07/09/26**

DANIEL K. BRENDTRO of
Hovland, Rasmus, &
   Brendtro, Prof. LLC
Sioux Falls, South Dakota

Attorneys for plaintiffs and appellants Estate of Paul O'Farrell and Skyline Cattle Company, LLC.


LEE SCHOENBECK
JOE ERICKSON of
Schoenbeck & Erickson P.C.
Watertown, South Dakota

Attorneys for appellees Raymond and Victoria O'Farrell Living Trust, Estate of Victoria O'Farrell and VOR, Inc.


WILLIAM BECK
SETH A. LOPOUR of
Woods, Fuller, Shultz
   & Smith, P.C.
Sioux Falls, South Dakota

REED RASMUSSEN of
Siegel, Barnett & Schutz
Aberdeen, South Dakota

Attorneys for defendant and appellee Grand Valley Hutterian Brethren, Inc.

#31101

SALTER, Justice

[¶1.]       Paul O'Farrell commenced this civil action against Kelly O'Farrell; Grand Valley Hutterian Brethren, Inc. (Grand Valley); and the Raymond and Victoria O'Farrell Living Trust (the Trust), seeking multiple forms of declaratory relief, rescission of a land sale to Grand Valley, and unspecified "tort damages." In addition to listing himself as a plaintiff, Paul claimed he was acting for the benefit of the Trust. He also included as co-plaintiffs the Estate of Victoria O. O'Farrell (the Estate), VoR, Inc. (VOR) and Skyline Cattle Company (Skyline).[1]

[¶2.]       With separate counsel, the Estate and VOR appeared and, through a summary judgment motion, challenged Paul's authority to sue on their behalf. Grand Valley also sought summary judgment arguing that Paul was unable to seek rescission because he was not a party to the land sale at issue. The circuit court granted the motions for summary judgment after denying Paul's motion to conduct additional discovery under SDCL 15-6-56(f) (Rule 56(f)). The court also denied Paul's motions to amend the complaint and for an order authorizing an examination pursuant to SDCL 15-6-35(a) (Rule 35(a)) for his father, Raymond.

[¶3.]       We granted Paul's petition for intermediate appeal and now affirm the circuit court's decision to grant summary judgment and its decision to deny Paul's Rule 56(f) motion. However, we vacate, in part, the court's order denying Paul's

---

1.    Paul died during the pendency of this action, and his estate has been substituted as a party. Skyline rented and farmed land owned by VOR for many years. Paul has been the sole owner of Skyline since 2019, and he named Skyline as a plaintiff in this action to assert what he alleges are its rights and to recover damages. For ease of reference, Paul, Paul's estate, and Skyline are collectively referred to as "Paul" throughout the opinion.

-1-

motion to amend the complaint, and we also vacate the court's order denying Paul's request for a Rule 35(a) examination and for attorney fees.

## Factual and Procedural Background

[¶4.]     Paul was one of five children born to Raymond and Victoria O'Farrell, who owned approximately 1,000 acres of farmland near the Grant County community of Marvin.  In 2002, Raymond and Victoria created VOR to hold their farm assets, including the farmland.  Paul lived on a portion of that land for many years and constructed a house and shop.

[¶5.]     In 2011, Raymond and Victoria created the Trust.  Paul alleges in his complaint that Raymond and Victoria "deposited all (or most) of their assets" into the Trust, including their shares of VOR.  The terms of the Trust contemplated that each of Raymond's and Victoria's five children would receive a specified portion of land.  Raymond and Victoria amended the Trust in March 2022, and Paul claims he was named as the "primary beneficiary" as well as the successor co-trustee in the event Raymond was unable to serve.

[¶6.]     In July 2022, Victoria commenced an action against Raymond, claiming he unlawfully assigned what Victoria alleged were her separate shares of VOR from their Trust to himself, individually.  Victoria sought a declaration that Raymond's attempted transfer of VOR shares was ineffective and invalid, and she asked to remove Raymond as the trustee of their Trust.  Victoria also asserted claims against Raymond for conversion and tortious interference with business relationships.

[¶7.]    Victoria died soon after filing suit against Raymond, and Raymond petitioned the circuit court to be named the special administrator of the Estate.[2] The petition was granted without notice to heirs or interested parties. Paul sought to remove Raymond as the special administrator and to be substituted in the role based entirely upon his claim that Raymond had a conflict of interest because he was the defendant in Victoria's action. But before the circuit court ruled on Paul's petition to remove Raymond, Paul appealed the order appointing Raymond as the special administrator. We dismissed the appeal after concluding it was not from a final appealable order, noting the pending motions to remove and replace the special administrator.[3]

[¶8.]    Following dismissal of the appeal, Paul renewed his petition to remove Raymond as the special administrator, citing Raymond's alleged conflict and also asserting for the first time that the appointment was procedurally invalid due to lack of notice and hearing. The circuit court denied Paul's petition to remove Raymond as the special administrator and granted a motion by Raymond to close the Estate. Paul again appealed, and we agreed with the court's conclusion that Paul had waived the lack of notice and hearing requirements because he did not initially object on that basis. *In re Est. of O'Farrell*, No. 31106, 2026 WL 827972, at

---

2.    After Victoria's death, Paul sought to intervene in Victoria's lawsuit. Raymond objected to Paul's intervention. Following a hearing on the motion, the circuit court orally denied the motion to intervene. Victoria's counsel then filed a notice of voluntary dismissal of her suit against Raymond. Paul appealed the order denying intervention, but we dismissed that appeal, noting the action was voluntarily dismissed without prejudice before the appeal was initiated.

3.    *Est. of Victoria O. O'Farrell*, Appeal No. 30532 (S.D. filed Dec. 18, 2024).

*1 (S.D. Mar. 24, 2026).  But we reversed the decision to deny the petition to remove

Raymond as the special administrator of the Estate, stating in our order:

> [A]t the time of the appointment of Raymond O'Farrell as the special administrator of the Estate of Victoria O. O'Farrell, Raymond O'Farrell was a named defendant in an action brought by Victoria O'Farrell and, as such, had a conflict of interest and was not qualified to serve as the special administrator.  Such conflict was apparent on the face of the petition for appointment of special administrator, which specifically referenced the civil action.

*Id.*

[¶9.]　　　　Paul's allegations in this case focus on his assertions that his brother

Kelly manipulated their father and "engaged in other misconduct, in order to set in

motion an improper and illegal set of maneuvers, all of which were designed to

enrich [Kelly] at the expense of his parents" and Paul.  He alleges Kelly "secretly

began an orchestrated effort to alienate and isolate Raymond from his family, with

the intent of thwarting various features of Raymond and Victoria's Estate plan and

disrupting farming operations."  He also asserts that in March 2022, Kelly engaged

in conduct that caused "substantial financial harm," including a sale of "$3.2 million

worth of O'Farrell family farmland" to Grand Valley.  Paul contends that he was

damaged by Kelly's actions, as was the Estate, the Trust, VOR, and Raymond.[4]

---

4.　　Paul also alleges the purchase agreement regarding the farmland sold to Grand Valley was "kept secret" and "no authority was obtained for it via [Victoria's] probate process."  In connection with what Paul described as "this attempted land sale," VOR issued notices of non-renewal to Paul, Skyline, and other occupants who were leasing the farmland.  Following Grand Valley's purchase of the land, it initiated eviction proceedings against Paul and Skyline—the entity through which the O'Farrells conducted their farming business.  Paul and Skyline appealed the circuit court's judgment and order of eviction in a separate appeal, and we affirmed with respect to

(continued . . .)

[¶10.]     Significantly, Paul claims in his complaint to be acting for others. For instance, he purports to be acting as a plaintiff "for the benefit of the Estate of Victoria O'Farrell," asserting that he is, "[b]y statute," an "interested party" of his mother's estate. He also maintains that his authority to bring suit on behalf of VOR arises from an assertion that he was the "most recent individual to be duly-elected" as its president before being wrongfully removed in 2022. For the Trust, Paul alleges he is "an interested person" and is bringing the suit on behalf of the Trust "to restore the property taken from [the Trust], and, to effectuate the appointment of Successor Co-Trustees."

[¶11.]     In his complaint, Paul groups an assortment of allegations into what he describes as three causes of action: (1) a declaratory judgment action seeking to void or invalidate certain acts by VOR, the Estate, and the Trust under the theory that they occurred without notice, consent, or authority and were accomplished by undue influence over Raymond; (2) rescission or "unwinding" of the land sale agreement between VOR and Grand Valley; and (3) damages that Paul alleged "would be available" for conversion, breach of fiduciary duty, and tortious interference.

[¶12.]     Soon after the complaint was filed, Paul sought to remove the assigned circuit court judge using the procedure set out in our court rule at SDCL 15-12-21.1, which allows a party one opportunity to unilaterally disqualify a judge under

---

(. . . continued)
     the eviction issues Paul raised, though we reversed the court's decision that personal property belonging to Paul and Skyline was forfeited as part of the eviction. *See VOR, Inc. v. Est. of O'Farrell*, 2025 S.D. 2, 17 N.W.3d 252.

certain conditions. The presiding judge of the Third Judicial Circuit ultimately denied Paul's request, and the assigned judge remained.

[¶13.] VOR, the Estate, and the Trust, together appeared and filed an answer, counterclaim, motion to dismiss, and motion for attorney fees, asserting principally that Paul had no authority to act for them.[5] Kelly filed a separate answer and counterclaim. Grand Valley filed a motion to dismiss in lieu of an answer pursuant to SDCL 15-6-12(b)(5).

[¶14.] The circuit court granted Grand Valley's motion to dismiss and took the other parties' motions to dismiss under advisement. The court eventually dismissed *all* of the claims pled in the complaint. Paul appealed the dismissal, as well as the denial of his requested change of judge. We held that the presiding judge of the Third Circuit erroneously applied the SDCL 15-12-21.1 rule and should have disqualified the assigned judge. *Est. of O'Farrell v. Grand Valley Hutterian Brethren, Inc.*, 2024 S.D. 81, ¶¶ 27–28, 15 N.W.3d 745, 752. As a result, we vacated all orders entered and remanded for appointment of a replacement judge. *Id.* ¶ 32, 15 N.W.3d at 753.

[¶15.] After the remand and appointment of a different judge, VOR, the Estate, and the Trust filed a motion for summary judgment, again based largely on the contention that Paul was not authorized to act for any of them. In addition, they claimed that Paul did not have the legal capacity to challenge the land sale. Grand Valley filed a separate motion for summary judgment and asserted that Paul has no authority or rights to seek rescission of the land sale contract and that the

---

5. Paul actually named the Trust as a defendant.

notice of rescission was otherwise deficient. Kelly has not filed any dispositive motions.

[¶16.] After the motions for summary judgment were filed, Paul's counsel filed a Rule 56(f) affidavit, seeking to conduct additional discovery to support his claims. The seven-page affidavit of counsel set out a lengthy list of information sought through depositions and written discovery, apparently none of which had yet been obtained during the pendency of the case. Paul also filed a motion to amend the complaint and a motion seeking a physical and mental examination of Raymond, pursuant to Rule 35(a).

[¶17.] The circuit court granted the various motions for summary judgment, concluding Paul did not have the authority to bring suit on behalf of VOR or the Estate, and dismissing them as plaintiffs. As it relates to the issues on appeal, the court determined it was undisputed that Raymond is the president of VOR, that Paul is not listed as an officer, director, or shareholder of VOR, and that Paul is neither a personal representative nor a special administrator for the Estate. The court also held that because Paul was not a party to the land sale agreement, he could not, under SDCL 53-11-2(1), rescind that agreement.

[¶18.] The circuit court concluded that additional discovery would not change any of these critical legal determinations and denied Paul's Rule 56(f) request. The court also denied Paul's motion to amend the complaint. Based on counsel's admission that the claim for "tort damages" was only against Kelly, the court granted the motion for summary judgment on this claim as it relates to the Trust and Grand Valley. The court denied Paul's Rule 35(a) motion to conduct an

examination of Raymond based on its conclusion that the "case does not center on the alleged undue influence of Raymond, but rather on whether the Plaintiffs have the authority to litigate this claim." Finally, the court relied upon SDCL 15-17-51 to award attorney fees to VOR, the Estate, and the Trust, after finding that Paul's action was frivolous.

[¶19.]    Paul sought intermediate review of the circuit court's orders, which we granted without opposition from the other parties. He identifies several issues on appeal, which we restate as follows:

> 1.    Whether the circuit court erred when it granted summary judgment to VOR and the Estate and dismissed them as plaintiffs.
>
> 2.    Whether the circuit court erred when it granted summary judgment on Paul's claim for rescission.
>
> 3.    Whether the circuit court abused its discretion when it denied Paul's Rule 56(f) request to conduct additional discovery.
>
> 4.    Whether the circuit court abused its discretion when it denied Paul's motion to amend the complaint and motion for a Rule 35(a) examination.
>
> 5.    Whether the circuit court erred in awarding attorney fees.

### Analysis

[¶20.]    The standards we apply in reviewing a circuit court's entry of summary judgment are well-settled:

> We review a circuit court's entry of summary judgment under the de novo standard of review. In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. We view the evidence most favorably to the nonmoving party and resolve

> reasonable doubts against the moving party. We will affirm the
> circuit court's summary judgment decision if there exists any
> basis which supports the ruling of the trial court.

*Anderson Indus., LLC v. Thermal Intel., Inc.*, 2025 S.D. 47, ¶ 23, 25 N.W.3d 257, 264 (citation modified).

### *Dismissing VOR and Victoria's Estate as plaintiffs*

[¶21.] The circuit court concluded that Paul had no authority to bring suit in the name of VOR or the Estate. Paul argues that in so doing, the court "ignored the substance" of his claims and "focused instead upon irrelevant issues, such as how the caption was aligned and whose name was listed as 'president' in the Secretary of State's records." Because SDCL 21-24-7 requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration," Paul claims that "as long as one or more plaintiffs are capable of seeking the 'declaration,' then all other interested partes should be joined, either as co-plaintiff, or as defendants."

[¶22.] The issue presented here is not whether VOR and the Estate are "suitable parties." Rather, the pertinent issue is Paul's *capacity to sue* on behalf of the named plaintiffs, VOR and the Estate. *See, e.g.*, *1 Litigating Tort Cases* § 5:8, Westlaw (database updated Oct. 2024) ("Capacity refers to a party's legal ability to sue and be sued in the courts of a particular forum. Capacity is not only the power to bring an action, but is also the power to maintain it once it has been initiated." (citation modified)). Whether seeking declaratory relief, rescission, or damages, Paul must have the capacity to sue on behalf of the named plaintiffs. As to VOR and the Estate, he does not.

### a.    Dismissal of VOR

[¶23.]    As a corporation, VOR has the power to bring suit in its own name. *See* SDCL 47-1A-302(1) (providing that a corporation has the power to "[s]ue and be sued, complain, and defend in its corporate name"); *see also* 19 Am. Jur. 2d Corporations § 1851, Westlaw (database updated May 2026) (explaining a suit for "injury to the corporation can only be brought by the corporation itself"). But because a "corporation is an artificial legal creation," it acts "only through its officers and agents," including its president. *Aimonetto v. Rapid Gas, Inc.,* 126 N.W.2d 116, 119 (S.D. 1964). *See also Hutterville Hutterian Brethren, Inc. v. Sveen,* 776 F.3d 547, 555 (8th Cir. 2015) (applying South Dakota law and noting that plaintiff, "as a South Dakota nonprofit corporation, . . . has the power to sue and be sued, complain and defend, in its corporate name," but that given its corporate form, could "act only through individuals acting as its agents, which comes down to the board of directors—its ultimate governing body" (citation modified)). *See also* 9 *Fletcher Cyc. Corp.* § 4216, Westlaw (database updated Sept. 2025) (noting that corporate directors generally have the authority to initiate or to defend an action, but such power can also be "vested in the president or other managing officer of the corporation" to institute and defend suits in the corporate name). Paul did not, at the time he commenced suit, hold any of the positions that would authorize him to sue on behalf of VOR.

[¶24.]    Paul compares his assertion of VOR's rights and claims in this action to a shareholder derivative action, although he cites no supporting authority to justify appropriating such a singular and exceptional procedure in this way. And,

in any event, the requirements for an actual shareholder derivative action bear little resemblance to Paul's efforts here.

[¶25.]        South Dakota's statutes concerning shareholder derivative actions contain specific requirements, including the obligation of the shareholder to make written demand on the corporation before the shareholder purports to bring an action in the name of the corporation. SDCL 47-1A-742. But even more fundamentally, a shareholder derivative action on behalf of VOR must be brought *by a shareholder*, which Paul was not. *See* SDCL 47-1A-741 ("No shareholder may commence or maintain a derivative proceeding unless the shareholder: (1) Was a shareholder of the corporation at the time of the act or omission complained of[.]").

[¶26.]        Based on VOR's 2022 Annual Report filed with the South Dakota Secretary of State, which was made a part of the record, the circuit court concluded that at the time the suit was commenced, Paul was not an officer, director, or shareholder of VOR. Beyond stating in his "opposition" to the court's memorandum opinion that the annual report "is not determinative," Paul has not challenged the accuracy of the court's determination. Nor has Paul cited to any record evidence that indicates he was an officer, director, or shareholder of VOR such that he had the authority to bring suit on VOR's behalf. Thus, the facts regarding Paul's inability to bring suit for VOR remain undisputed, and the court correctly granted the motion for summary judgment seeking to dismiss VOR as a plaintiff in this action.

### b. *Dismissal of the Estate*

[¶27.]     The circuit court determined that "it is undisputed that Paul is neither a personal representative nor a specially appointed administrator" of the Estate and it, therefore, concluded that Paul had no authority to make claims on behalf of the Estate.  Our statutes support that conclusion.  *See* SDCL 29A-3-703 ("Except as to proceedings which do not survive the death of the decedent, a personal representative . . . has the same standing to sue and be sued . . . as the decedent had immediately prior to death."); SDCL 29A-3-617 ("A special administrator appointed by order of the court in any formal proceeding has the powers of a general personal representative, except as limited in the order of appointment, and the duties as prescribed in the order.").

[¶28.]     Paul asserts that he is authorized to act on behalf of the Estate by virtue of his status as an interested person, citing a Nebraska Supreme Court decision.  *See Beachy v. Becerra*, 609 N.W.2d 648, 651–52 (Neb. 2000).  The common law standing rule stated in *Beachy* provides that "when the legal representative has failed or refused to act, the heir may maintain an action to recover assets for the benefit of the estate."  *Id.* at 652 (citation omitted).  It is unclear whether the rule would even be necessary following South Dakota's enactment of the Uniform Probate Code, which contains specific statutory provisions for removing a personal representative or special administrator.  *See* SDCL 29A-3-611 (authorizing "[a]ny interested person" to petition for the removal of personal representative for cause); SDCL 29A-3-618 (providing that the appointment of a special administrator is

"subject to termination as provided in §§ 29A-3-608 to 29A-3-611, inclusive").
Regardless, though, the rule stated in *Beachy* would not apply here.

[¶29.]     Frankly, even the *Beachy* court did not actually apply the rule. It
stated it, and then held that the question of the heir's ability to bring suit was
rendered moot by the removal of an allegedly conflicted personal representative.
*Beachy*, 609 N.W.2d at 652.

[¶30.]     But, beyond this, there are two other reasons Paul cannot prevail on
his claim to represent the Estate under a *Beachy* theory. The first requires us to set
the argument within the context of the serpentine procedural history of the
O'Farrell constellation of cases. In late 2022, after Raymond had been appointed
the special administrator of the Estate, Paul petitioned to remove Raymond and
have himself substituted, citing SDCL 29A-3-611. After Paul's attempted appeal
was dismissed, he filed a renewed petition to remove Raymond as the special
administrator. The circuit court denied the petition to remove Raymond in May
2025. Paul appealed, as indicated, and we reversed that determination by order.
*See supra* at ¶ 7.

[¶31.]     Therefore, at the time Paul commenced this case in March 2023,
purporting to act on behalf of the Estate, he had petitioned to remove Raymond, but
the issue had not been decided by the circuit court. When it was ultimately
presented to the court and decided adversely to Paul, he exercised his right to
appellate review and ultimately prevailed. In other words, he has no need for a
common law *Beachy*-type rule. He needed only to exhaust his statutory remedies in
order to remove Raymond.

[¶32.]     The second reason why Paul cannot act for the Estate is that subsequent events have rendered the capacity question moot.  Not only have we reversed the circuit court's decision denying Paul's petition to remove Raymond, Paul, himself, has passed away and can no longer act for the Estate.  In our order disposing of the appeal, our remand instructions required the court to "appoint a qualified special administrator . . . to perform such duties as are necessary to determine whether Victoria O'Farrell died intestate and to determine what assets or claims, if any, Victoria possessed at the time of her death."  *In re Est. of O'Farrell*, 2026 WL 827972, at *1.

[¶33.]     Notably, the circuit court in its summary judgment ruling in this case also concluded that Paul's request for declaratory relief relating to the Estate "must be brought within the estate/probate proceeding."  Although Paul briefly mentions this ruling, *he has not challenged it on appeal.  See Shevling v. Major*, 2026 S.D. 27, ¶ 51, 35 N.W.3d 833, 850 (holding an issue on appeal is waived by a party's failure to make any argument on the issue).

[¶34.]     For all these reasons, we affirm the circuit court's summary judgment decision that dismissed the Estate from this case.

### *The individual requests for declaratory relief*

[¶35.]     In the first count of his complaint, Paul seeks declaratory relief regarding purported "improper corporate, trust, probate, and individual actions" and regarding Skyline's and Paul's rights concerning the real estate sold to Grand Valley.  The motion for summary judgment principally centered on Paul's

representative capacity, and, as a result, the circuit court's memorandum opinion does not directly address much of the declaratory relief sought.

[¶36.]     As noted, the opinion states, "As Count 1 pertains to the Estate, it must be brought within the estate/probate proceeding. Thus summary judgment regarding Count 1 *as it pertains to the Estate* is GRANTED." (Emphasis added.) The circuit court also determined that Paul did not "plead any cause of action against Grand Valley in Count 1." In its order, the court's only references to declaratory relief are the statement that "to the extent Count 1 pertains to the Estate of Victoria O'Farrell, it is dismissed" and its statement granting "Grand Valley's Motion for Summary Judgment with respect to Counts 1, 2, and 3." The court's decision granting summary judgment focused on Paul's claim that he had the representative capacity to commence the action on behalf of VOR and the Estate.[6]

[¶37.]     All of this to say the circuit court did not pass on the merits of the claims regarding VOR's actions and the Trust's actions or naming a successor trustee. Nevertheless, Paul seems insistent that the petition for intermediate appeal placed the issues before us, stating the court "granted 'partial' summary judgment, but the scope of that partial summary judgment is a *full and complete*

---

6.     The Trust, VOR, and the Estate (as defendants) also moved for summary judgment on Paul's claim seeking a declaration that Skyline is "legally permitted to continue farming" the land sold to Grand Valley and that Paul "is legally permitted to continue occupying" the land. The circuit court correctly noted that we decided these claims, at least with respect to immediate possession, in our decision affirming Paul's and Skyline's eviction in the prior forcible entry and detainer matter. *VOR, Inc. v. Est. of O'Farrell*, 2025 S.D. 2, 17 N.W.3d 252.

summary judgment as to all of the Plaintiffs' claims involving the Trust, VOR, and the land." None of the parties have voiced disagreement with Paul's interpretation, and the other parties appear to be operating under the belief that the court granted relief on all of Paul's claims against them.

[¶38.]    We read the circuit court's memorandum opinion and corresponding order differently. It is patently clear that the court did not reach the merits of the request for declaratory relief, as we have explained, and we decline to address issues that that court did not consider and decide. *See Hall v. State ex rel. S.D. Dep't of Transp.*, 2006 S.D. 24, ¶ 12, 712 N.W.2d 22, 27 (stating the Court "will only review the issues that were presented to and determined by the trial court").

### *The claim for rescission*

[¶39.]    The second count of Paul's complaint seeks rescission of VOR's sale of land to Grand Valley based on Paul's allegation that "Raymond's consent for the transaction was procured via undue influence, or without his full understanding, and without following necessary corporate formalities." Paul claims that the "land transaction should be rescinded by this [c]ourt."

[¶40.]    VOR and Grand Valley moved for summary judgment, with both generally asserting that Paul (and now his estate) has no right to rescind the land sale and that he cannot restore the consideration Grand Valley paid for its purchase of the land. Grand Valley also notes that, to date, there is no evidence of undue influence over Raymond, who effectuated the land sale on behalf of VOR in October 2022.

[¶41.]     The circuit court granted the motions for summary judgment on the rescission claim, stating in its memorandum opinion that statutory rescission under SDCL 53-11-2(1) is available only for a *party* to the contract, which Paul is not.  The court further concluded that Paul did not establish he was entitled to equitable rescission under SDCL 21-12-1.

[¶42.]     Rescission can be obtained pursuant to SDCL 53-11-2 or through an equitable action pursuant to SDCL 21-12-1.  *CAL SD, LLC v. Interwest Leasing, LLC*, 2024 S.D. 76, ¶ 21 n.5, 15 N.W.3d 433, 439 n.5 (quoting *Knudsen v. Jensen*, 521 N.W.2d 415, 417 (S.D. 1994)).  The text for each statute provides:

> **SDCL 53-11-2**—A party to a contract may rescind the same in the following cases only:
>
> (1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;
>
> (2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;
>
> (3) If the consideration becomes entirely void from any cause;
>
> (4) If such consideration before it is rendered to him fails in a material respect from any cause; or
>
> (5) By consent of all the other parties.
>
> **SDCL 21-12-1**—The rescission of a written contract may be adjudged on the application of a party aggrieved:
>
> (1) In any of the cases mentioned in § 53-11-2;

> (2) Where the contract is unlawful, for causes not apparent upon its face, and the parties were not equally in fault;
>
> (3) When the public interest will be prejudiced by permitting it to stand.

[¶43.] In *CAL SD, LLC*, we noted the differences between these rescission statutes and explained:

> The grounds for legal rescission are set forth in SDCL 53-11-2 and these same grounds are the basis for equitable rescission under SDCL 21-12-1. The difference between the two types of rescission is in the relief sought. If the action is in equity, the rescission is accomplished by court decree. Rescission is equitable if the complaint asks the court to order rescission of a contract. It is legal if the court is asked to enforce a completed rescission.

2024 S.D. 76, ¶ 21 n.5, 15 N.W.3d at 439 n.5 (citation modified).

[¶44.] Here, Paul has not sought to enforce an already completed rescission—legal rescission. Rather, he requested that the circuit court order a rescission of the land sale contract—equitable rescission—based on the alleged undue influence exerted over Raymond, who entered into the land sale contract on behalf of VOR. *See S.D. Bd. of Regents ex rel. Black Hills State Univ. v. Glob. Synthetics Env't., LLC*, 270 F. Supp. 3d 1088, 1107 (D.S.D. 2017) (citing *Mattson v. Rachetto*, 591 N.W.2d 814, 818 (S.D. 1999) (describing the remedy of equitable rescission as "extraordinary")). Further, because Paul seeks rescission based upon alleged undue influence, whether he seeks legal or equitable rescission, SDCL 53-11-2(1) applies. *See* SDCL 21-12-1(1) (incorporating SDCL 53-11-2 by reference).

[¶45.] VOR and Grand Valley argue that whether the remedy sought is legal or equitable rescission, Paul, who was not a party to the land sale contract in any

capacity, cannot seek this remedy. Paul asserts that he has the "*legal* ability to effectuate the unilateral rescission permitted under SDCL 53-11-2(1)" based on his allegation that he was "improperly removed as an officer of VOR" and at the time of the land sale contract, he was the validly elected president. However, even if that legal premise were sound, which we do not hold, Paul has not produced record evidence supporting that assertion.

[¶46.] In fact, in response to VOR's statement of undisputed material fact that, "Raymond A. O'Farrell was the president, director, and owner of VOR, Inc. in August of 2022," Paul simply stated:

> DISPUTED. The Complaint, the attachments to it, and the Record generally demonstrate that Raymond's election as president, director, and owner of VOR are disputed; the disputes include a failure to follow corporate formalities and notice provisions, and, capacity questions, and question of undue influence.

[¶47.] But, this sort of a conclusory response without any citations to the record is insufficient to resist a motion for summary judgment, as SDCL 15-6-56, itself, requires:

> When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him.

SDCL 15-6-56(e) (emphasis added); *see also* SDCL 15-6-56(c)(2) (requiring the party opposing summary judgment to respond to the statement of undisputed material facts with "citations to the record").

[¶48.] Our cases have faithfully applied this rule. They require a party responding to a summary judgment motion, like Paul, to "substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Anderson Indus.*, 2025 S.D. 47, ¶ 25, 25 N.W.3d at 265 (citation modified); *Zochert v. Protective Life Ins.*, 2018 S.D. 84, ¶ 19, 921 N.W.2d 479, 486 ("The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." (citation modified)).

[¶49.] Paul alternatively argues that even if he cannot seek legal rescission on behalf of VOR, he can seek equitable rescission, and that his status as a "party aggrieved" is sufficient to make this remedy available to him. But this argument fails to support a meaningful difference between "party" and "party aggrieved," at least in this case, because it overlooks the statutory requirement of SDCL 21-12-1(1) that connects equitable rescission to the grounds for rescission—equitable rescission "may be adjudged . . . [in] any of the cases mentioned in § 53-11-2[.]"[7] Paul was not a party to the land sale agreement that he seeks to rescind, and the circuit court, therefore, correctly determined that neither Paul nor Skyline could seek rescission of the contract. *See* SDCL 53-11-2 ("A party to a contract may rescind the same[.]"); 17B C.J.S. Contracts § 591, Westlaw (database updated April

---

7. Paul has not alleged the existence of the other two SDCL 21-12-1 bases for equitable rescission—"(2) Where the contract is unlawful, for causes not apparent upon its face, and the parties were not equally in fault" and "(3) When the public interest will be prejudiced by permitting it to stand."

2026) ("The rescission of a contract generally refers to the cancellation, annulment, or abrogation of the contract *by the parties or one of them*[.]" (emphasis added)).

[¶50.] Regardless, although pled in the complaint as a separate claim or "count," rescission is not a claim at all—it is a remedy, as we have held. *See Beals v. AutoTrac, Inc.*, 2017 S.D. 80, ¶ 10 n.1, 904 N.W.2d 765, 768 n.1 (stating that "rescission is a *remedy—not a cause of action*—available in contract cases" (emphasis added) (citation omitted)); *see also Kennebrew v. Harris*, 425 S.W.3d 588, 595–96 (Tex. Ct. App. 2014) ("Because rescission is a remedy, it is available only if the other party to the contract has committed some wrong." (citation omitted)); *Baglivo v. Mut. of Omaha Ins. Co.*, No. 20-CV-15605, 2025 WL 2976657, at *9 (D.N.J. Oct. 22, 2025) ("A party seeking rescission must identify and establish a substantive basis for that remedy.").

[¶51.] In this regard, we note that Paul has alleged Kelly exerted undue influence over Raymond as the basis for rescission. Again, without agreeing with the premise that Kelly's alleged undue influence necessarily gives Paul the ability to, as he says, "unwind" the land sale, it is sufficient here to note that Paul did not successfully resist summary judgment on the rescission claim if it was based on undue influence.

[¶52.] In response to Grand Valley's statement of undisputed material fact— "there is no evidence of what Kelly did or said to Ray giving rise to this dispute"— Paul responded only that "[u]ndue influence can be shown with circumstantial evidence, rather than with evidence of certain statements," without actually producing any circumstantial evidence in support of his claim. This falls far short

of Paul's duty to "substantiate his allegations with sufficient probative evidence." *Anderson Indus.*, 2025 S.D. 47, ¶ 25, 25 N.W.3d at 265 (citation omitted).

[¶53.]     Under the circumstances, the observations of the court in the *Baglivo* case seem particularly apt:

> As previously indicated, rescission is a remedy—not a cognizable cause of action. For that very reason, courts in this district have consistently dismissed so-called "rescission claims" as invalid on their face.
>
> This imprecision is not a matter of mere formality or nomenclature—it reflects a fundamental defect that goes to the heart of what constitutes a justiciable claim and the Court's authority to grant relief grounded in a recognized legal right. *See United States v. Tohono O'Odham Nation*, 563 U.S. 307, 331 (2011) (observing that "entitlement to relief is essential to the existence of a claim or cause of action").

*Baglivo*, 2025 WL 2976657, at *9.

### Paul's Rule 56(f) request to conduct additional discovery

[¶54.]     Perhaps sensing the need for additional factual support for his claims, Paul sought more time to conduct discovery pursuant to Rule 56(f). The circuit court denied that request, stating "further discovery will not change the outcome of this proceeding." Paul appeals this ruling.

[¶55.]     The text of Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

[¶56.]     This rule requires that Paul establish that the facts sought through discovery are "'essential' to opposing the summary judgment," which, in turn,

"requires a showing how further discovery will defeat the motion for summary judgment." *Stern Oil Co. v. Border States Paving, Inc.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d 273, 281 (citations omitted).

> To make this showing, the Rule 56(f) affidavit must include identification of the probable facts not available and what steps have been taken to obtain those facts, how additional time will enable the nonmovant to rebut the movant's allegations of no genuine issue of material fact, and why facts precluding summary judgment cannot be presented at the time of the affidavit.

*Id.* at 281–82 (citation modified).

[¶57.] "The circuit court has discretion under SDCL 15-6-56(f) to determine whether a party has demonstrated that additional discovery is necessary to defeat the motion for summary judgment." *Harvieux v. Progressive N. Ins.*, 2018 S.D. 52, ¶ 23, 915 N.W.2d 697, 703. We review the court's decision to deny a continuance requested under Rule 56(f) for an abuse of discretion. *Davies v. GPHC, LLC*, 2022 S.D. 55, ¶ 51, 980 N.W.2d 251, 265.

[¶58.] Here, the circuit court did not abuse its discretion when it determined that Paul's Rule 56(f) showing fell short. There is little doubt that additional discovery could not alter the fact that Paul does not have the authority to bring suit on behalf of VOR or the Estate. Additional time would not change the fact that Paul is not an owner, officer, or director of VOR. And there is simply no specific showing that Paul could hope to discover evidence that would allow him to bring suit on behalf of an estate that he has not been appointed to represent.

[¶59.] Further, the Rule 56(f) affidavit from Paul's counsel is more of a general blueprint for discovery that could have been drafted in 2023 when the case

was commenced, and less a specific showing of how additional time for discovery will allow Paul to successfully resist summary judgment, as Rule 56(f) and our cases require. Of course, nothing connected with the circuit court's Rule 56(f) ruling, or ours, precludes Paul from undertaking discovery after our resolution of this intermediate appeal, but we hold that the court did not abuse its discretion in denying Paul Rule 56(f) relief and proceeding to resolve the summary judgment motions that were before it.

### *The motion to amend the complaint and for a Rule 35(a) examination*

[¶60.] In its decisions denying Paul's motions to amend the complaint and to authorize a Rule 35(a) examination of Raymond, the circuit court rejected the idea that this was even an undue influence case. The court is correct in the sense that Paul's complaint does not set out a specific claim for undue influence. *See Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 35, 790 N.W.2d 52, 64 (listing the elements of undue influence as: "(1) decedent's susceptibility to undue influence; (2) opportunity to exert such influence and effect the wrongful purpose; (3) a disposition to do so for an improper purpose; and, (4) a result clearly showing the effects of undue influence").

[¶61.] But still, Paul does make several general, diffuse statements in the complaint that Kelly exerted influence over Raymond. And the sufficiency of the complaint is not at issue in this summary judgment proceeding, particularly given the fact that Kelly has not sought dismissal or summary judgment. Beyond this, the posture of this intermediate appeal and our disposition make clear that the case, in some form, will continue after our remand. Indeed, the merits of the tort claims referenced in the third count remain, as do some of the declaratory judgment

claims in the first count, and a claim for unjust enrichment, which was referenced in the complaint as an alternative to rescission.

[¶62.] Complicating our review of the circuit court's decisions to deny the motion to amend and the motion for a Rule 35(a) examination is the fact that Paul does not fully develop an appellate challenge to either. As to the former, he has argued that amending the complaint to realign the parties would be an alternative to summary judgment, though the proposed amended complaint did more than just realign the parties, and Paul simultaneously continues to maintain in this appeal that he could sue on behalf of the Trust, VOR, and the Estate. And as to the Rule 35(a) ruling, Paul does not develop a direct challenge to the court's Rule 35(a) determination that "Raymond's mental status is not at issue." *See* SDCL 15-6-35(a) ("In an action in which the mental or physical condition of a party . . . is in controversy, the court in which the action is pending may order such person or party to submit to a physical or mental examination.").

[¶63.] Paul operates under the premise that he has properly pled a claim for undue influence, just as the circuit court seemed to believe he has not. But the resolution of the summary judgment claims here does not require a definitive determination of that question, which is better left for further proceedings after the case is remanded.

[¶64.] For now, it is enough to conclude that the unresolved nature of the Count 1 declaratory judgment claims involving VOR and the Trust would require joinder of VOR and Raymond, the current Trustee of the Trust, as defendants (the

Trust was named as a defendant in the existing complaint).[8] *See* SDCL 21-24-7 ("When declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."). Because of this, the circuit court's order precluding the addition of the unnamed defendants for the still-viable declaratory claims is not within the range of permissible choices, and we vacate the portion of the court's order denying Paul's motion to amend the complaint that prevented him from joining VOR and Raymond as defendants.[9] *See Hamer v. Duffy*, 2026 S.D. 4, ¶ 12, 31 N.W.3d 680, 686 ("We review the circuit court's decision to grant or deny a motion to amend pleadings using the abuse of discretion standard of review." (citation omitted)).

---

8.    The captions for Paul's principal appellate brief and his reply brief inexplicably list as defendants "Raymond O'Farrell, individually, as Trustee, and as Special Administrator of the Estate of Victoria O'Farrell; and VOR, Inc. (by Raymond O'Farrell)." Neither Raymond nor VOR have previously been listed as defendants in the case caption—indeed, their roles as parties in this litigation is a central issue on appeal. We are unable to find any order permitting this change. We note that the petition for intermediate appeal did not list Raymond or VOR as defendants, which is consistent with the caption on the complaint and the caption used in the circuit court proceedings and in our previous opinion in this case. *See Est. of O'Farrell v. Grand Valley Hutterian Brethren, Inc.*, 2024 S.D. 81, 15 N.W.3d 745. We are left to conclude that the incorrect captions reflect unilateral changes to state that Raymond and VOR are *already* defendants, despite the fact that Paul did not prevail on his motion to amend the complaint. This action was not authorized.

9.    VOR and Raymond argue that VOR's realignment would effectively mean that Paul's attorneys were transgressing the Rules of Professional Responsibility by suing a former client. But this argument is incongruent with their other argument that Paul *lacked* the authority to bring suit on behalf of VOR, the Trust, and the Estate, which has been accepted by both the circuit court and by us.

[¶65.]     We also vacate the circuit court's order denying the Rule 35(a) examination. Until the question of whether Paul has pled a claim of undue influence is squarely presented and resolved, the court's resolution of the Rule 35(a) motion under the rule's "good cause" standard was premature. *See Stormo v. Strong*, 469 N.W.2d 816, 822 (S.D. 1991) (court's discretionary decision to authorize a Rule 35(a) examination turns on a showing of good cause under the circumstances of the case).

### *Attorney fees under SDCL 15-17-51*

[¶66.]     VOR, the Estate, and the Trust moved for an award of attorney fees pursuant to SDCL 15-17-51, arguing that the action was frivolous. The circuit court agreed, granted the motion, and after counsel's submission of the fees incurred in this case, awarded fees and costs in the amount of $56,337.40. Paul appeals the award of fees and costs, arguing this action is not frivolous.[10]

[¶67.]     Whether attorney fees are authorized is a question of law that is reviewed de novo. *Toft v. Toft*, 2006 S.D. 91, ¶ 10, 723 N.W.2d 546, 549. Attorney fees are allowable under SDCL 15-17-51, which states:

> If a civil action . . . is dismissed or requested relief is denied and if the court determines that it was frivolous or brought for malicious purposes, the court shall order the party whose claim, cause of action, or defense was dismissed or denied to pay part or all expenses incurred by the party defending the matter, including reasonable attorneys' fees.

---

10.    Paul does not challenge the award of attorney fees on any other basis and did not file with the circuit court any objection to the amount of fees awarded, nor does he claim on appeal that the amount was improper.

[¶68.]     In *Reidburn v. South Dakota Department of Labor & Regulation Reemployment Assistance Division*, we explained that a "frivolous action exists when the proponent can present no rational argument based on the evidence or law in support of the claim." 2024 S.D. 19, ¶ 29, 5 N.W.3d 834, 841 (citation modified). In addition, we clarified that "to fall to the level of frivolousness there must be such a deficiency in fact or law that no reasonable person could expect a favorable judicial ruling." *Id.* (citation modified).

[¶69.]     In support of its award of attorney fees and costs, the circuit court based its frivolous determination upon a finding that "Paul named VOR as a plaintiff without the requisite authority to act on its behalf, and pursued claims on behalf of [the Estate] without proper authority." Paul argues that his "effort to pursue claims that would rectify substantial allegations of undue influence 'cannot be characterized as a legal position so wholly without merit as to be ridiculous.'"

[¶70.]     Paul's argument ignores, however, that even *if* the substantive claims had merit, he did not have the authority to bring such claims on behalf of VOR or the Estate—a fact that should have been apparent to him at the time he filed his complaint and certainly by the time the second round of dispositive motions were filed. For the reasons discussed above, Paul could not reasonably believe he was an owner, shareholder, or officer of VOR. Similarly, Paul could not reasonably believe he was the personal representative or special administrator of the Estate or had any other legal authority to sue on its behalf, as we explained above. *See supra* at ¶¶ 23–28.

[¶71.] Nevertheless, despite our agreement with the circuit court's findings in this regard, its attorney fee award seems premature. The court found that both the "action" and the "complaint" were frivolous. This is an apparent reference to the text of SDCL 15-17-51, which authorizes an attorney fee award when a frivolous "action" is dismissed. But here, the dismissal of VOR and the Estate as plaintiffs was not the dismissal of an "action" or the denial of "requested relief." SDCL 15-17-51. A portion of the case remains, as we have noted, and the court's attorney fee award under SDCL 15-17-51 is premature.[11] Indeed, it is possible that Paul could still prevail on some of the remaining claims.

**Conclusion**

[¶72.] Paul had no authority to bring suit on behalf of VOR or the Estate and the circuit court did not err when it granted summary judgment and dismissed them as plaintiffs. Because he was not a party to the land sale contract, Paul cannot seek to rescind it, and the court correctly granted VOR's and Grand Valley's motions for summary judgment on that claim. Paul failed to demonstrate that additional time would enable him to produce facts in support of his summary judgment resistance, and the court did not abuse its discretion in denying Paul's Rule 56(f) motion. We affirm on these issues.

---

11. We also deny the motion by VOR, the Estate, and the Trust for an award of appellate attorney fees pursuant to SDCL 15-26A-87.3, which, we have held, authorizes attorney fees when they "are permissible at the trial level." *Matter of Dissolution of Healy Ranch, Inc.*, 2026 S.D. 15, ¶ 83, 32 N.W.3d 721, 747 (citation modified). Because we are vacating the circuit court's order awarding attorney fees, there is no basis for an award of appellate attorney fees.

[¶73.]     However, we vacate the circuit court's order denying the motion to amend insofar as it denied an amendment to allow VOR and Raymond to be joined as defendants. We also vacate the court's order awarding attorney fees and the order denying a Rule 35(a) examination of Raymond.[12]

[¶74.]     JENSEN, Chief Justice, and MYREN and GUSINSKY, Justices, concur.

[¶75.]     DEVANEY, Justice, concurs in part and dissents in part.

DEVANEY, Justice (concurring in part and dissenting in part).

[¶76.]     While I concur in many respects with the majority opinion's resolution of most of the issues raised in this appeal, I write separately to explain my alternative or additional reasons for reaching the same conclusions, and to explain why I respectfully dissent as to one of the issues. I concur with the majority opinion's determination that the circuit court did not err in dismissing VOR as a plaintiff in the pending lawsuit. Because Paul was not a shareholder of VOR, he could not bring a shareholder derivative action, and Paul's estate, as the current plaintiff and appellant, has conceded in this appeal that after Paul's death, he is "no longer an ousted officer capable of seeking relief under the theory that he remains the last, rightful President of VOR." As such, I agree with the majority opinion's

---

12.    Paul has moved to consolidate this appeal with the recent appeal regarding Victoria's Estate. We have referred to the Estate appeal in several instances in this opinion and grant the motion to that limited extent. We deny Paul's additional request for us to "upon remand . . . direct the consolidation of [both cases] as permitted by SDCL 15-6-42(a)[.]" The request is unconnected to an allegation of error and there was no request for consolidation before the circuit court. Under the circumstances, this seems like an extraordinary level of supervision over the circuit court's authority to manage its cases.

conclusion that the circuit court did not err in dismissing the request for rescission of the land sale under Count 2. As currently pled and argued below, such remedy is not available under either SDCL 53-11-2(1) or SDCL 21-12-1(1) to those who are not a party to the transaction.

[¶77.] I also agree with the majority opinion that several of the claims seeking declaratory relief under Count 1 remain because the circuit court's order did not dispose of them. Although matters relating to the interpretation of the Trust Agreement and its application to Raymond's acts on behalf of the Trust and VOR were briefed and argued by the parties below in the context of whether the land sale could be rescinded, the circuit court did not address these arguments or rule on them. Such arguments, which also apply to the pending claims for declaratory relief, involve matters of law and fact, and I agree with the majority opinion's determination that they must be considered and resolved below.[13]

[¶78.] I further agree with the majority opinion that the circuit court erred in denying the motion to amend the alignment of the named parties. In my view, the circuit court's reasons for denying the motion to amend are unsound. The court stated that "[t]his case does not center on the alleged undue influence of Raymond, but rather on whether the Plaintiffs have the authority to litigate this claim." The

---

13. Much of the discovery outlined in Paul's Rule 56(f) motion pertains to the claims for declaratory relief regarding whether Raymond's actions violated corporate rules or the Trust Agreement and whether Raymond should be removed as Trustee of the Trust. While I disagree with the circuit court's expressed reason for denying the Rule 56(f) motion, i.e., that "further discovery will not change the outcome of this proceeding," because these declaratory claims, the unjust enrichment claim, and the undue influence and tort claims against Kelly are still pending, I agree with the majority opinion that much of this discovery could still be undertaken on remand.

court then stated that the proposed "amendments do not alter the outcome of its prior analysis" of the issues regarding whether Paul could bring a claim on behalf of VOR and Victoria's Estate. The first statement, which mirrors the court's expressed reason for denying a motion for a Rule 35(a) examination of Raymond, is not supported by the record, nor was it asserted by the parties. The existing complaint centers on two things: (1) an assertion that Kelly unduly influenced Raymond; and (2) the allegation that Raymond's actions were in violation of corporate rules and the Trust Agreement. Perhaps the reference to "this case" was an inadvertent error and the court was instead referring only to the summary judgment motions. But if so, contrary to the court's second statement that the proposed amendment would not alter the outcome of its analysis of the summary judgment issues, the proposed amendment to realign the parties resolves the summary judgment argument that Paul or his estate could not bring a claim on behalf of VOR or Victoria's Estate.

[¶79.] Moreover, the proposed realignment did not effect any substantive changes in the existing claims, nor could it cause any prejudice to these parties, who had already appeared in this lawsuit and had asserted defenses to such claims on numerous prior occasions in this lawsuit and in other related proceedings. *See Hamer v. Duffy*, 2026 S.D. 4, ¶ 13, 31 N.W.3d 680, 686 (noting that "[t]he most important consideration in determining whether a party should be allowed to amend a pleading is whether the nonmoving party will be prejudiced by the amendment" (citation omitted)). I therefore agree with the majority opinion that the circuit court abused its discretion when denying the motion to amend the current alignment of the parties to include both VOR and Raymond as defendants

or interested parties under SDCL 21-24-7, and when prematurely denying the Rule 35(a) motion for an examination of Raymond. *Hamer*, 2026 S.D. 4, ¶ 12, 31 N.W.3d at 686 (reviewing a circuit court's decision whether to grant or deny a motion to amend for an abuse of discretion and noting that "[a]n abuse of discretion occurs when discretion [is] exercised to an end or purpose not justified by, and clearly against reason and evidence" (second alteration in original) (citation omitted)).

[¶80.]     However, I part ways with the majority opinion's analysis on the question of whether the circuit court erred when dismissing Victoria's Estate as a plaintiff. I agree with the premise that an action brought on behalf of an estate must generally be brought by a personal representative or special administrator of the estate, and neither Paul nor his estate could act in that capacity. But the circuit court did not address the claim that Paul and his estate made below and on appeal, i.e., that a person with an interest in an estate may bring an action to recover assets for the benefit of the estate if a personal representative has refused to do so. *See Beachy v. Becerra*, 609 N.W.2d 648, 651−52 (Neb. 2000) (citing 31 Am. Jur. 2d *Executors and Administrators* § 1285 at 604 (1989) to support this principle); *see also Bem v. Shoemaker*, 74 N.W. 239, 240 (S.D. 1898) (affirming a "holding that the heirs of the estate, after the refusal of the administrator to act, could maintain the action" to recover property for the estate, noting that "[c]ourts of equity are always open to heirs . . . of an estate . . . to give them redress whenever those whose duty it is to protect the trust property refuse to perform their duty"); *cf. In re Est. of Calvin*, 2021 S.D. 45, ¶ 18, 963 N.W.2d 319, 324 (similarly noting, in the context of trusts, that "[a] beneficiary may maintain a proceeding related to the

trust or its property against a third party only if . . . the trustee is unable, unavailable, unsuitable, or improperly failing to protect the beneficiary's interest" (alterations in original) (citation omitted)).

[¶81.] There is no dispute that, at the time Paul filed his lawsuit, Raymond was acting as the appointed special administrator of Victoria's Estate and had refused to maintain the action Victoria had commenced against him prior to her death alleging violations of their longstanding estate plans and Trust Agreement. These are the same violations that Paul, as a named beneficiary and successor trustee in the Trust Agreement, and now his estate, have asserted in this lawsuit. Nevertheless, I acknowledge that a reversal on this issue is not warranted, at this time, given our recent order in *In re Est. of O'Farrell*, No. 31106, 2026 WL 827972, at *1 (S.D. Mar. 24, 2026) reversing the circuit court's denial of Paul's petition to remove Raymond as special administrator because of his apparent conflict of interest. Our order further directs the court, on remand, to appoint a qualified special administrator "to perform such duties as are necessary to determine whether Victoria O'Farrell died intestate and to determine what assets or claims, if any, Victoria possessed at the time of her death." It is now uncertain what claims may or may not be asserted by a newly appointed administrator of Victoria's Estate.

[¶82.] As to the related matter of the circuit court's ruling dismissing Count 1 (seeking declaratory relief) "as it pertains to Victoria's Estate," I disagree with the statement in the majority opinion that Paul has failed to make an argument challenging this ruling on appeal. Within Paul's first asserted issue challenging the circuit court's grant of summary judgment with respect to Count 1, he notes the

court's ruling dismissing Count 1 "as it pertains to the Estate" on the basis that "it must be brought within the estate/probate proceeding," and argues that, under SDCL 21-24-7, "Victoria's Estate and VOR, Inc., are proper parties, regardless of whether they are denominated as plaintiffs o[r] defendants." In my view, just as VOR, Raymond, and the Trust have interests that would be affected by the declaratory relief requested, so too would Victoria's Estate. And while it is true that declaratory relief could also be sought in the estate/probate proceeding, this does not preclude the declaratory relief being sought in Paul's lawsuit. Under SDCL 15-6-57, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *See Agar Sch. Dist. v. McGee*, 527 N.W.2d 282, 287 (S.D. 1995) (rejecting a trial court's dismissal of a request for declaratory relief on the basis that a different proceeding would be better suited to address the factual matters presented, noting that "*[a] request for declaratory relief may be allowed even when another adequate remedy exists*"). In the event claims are asserted in the estate/probate proceeding that overlap with those pending in Paul's lawsuit, the circuit court may consider whether to consolidate such claims if presented with a motion for such on remand.

[¶83.] Finally, while I agree with the majority opinion's determination that the circuit court's grant of attorney fees on the basis that Paul's complaint was frivolous as a matter of law was premature, for the reasons I explain above, I do not agree that Paul had no reasonable basis to assert claims for the benefit of Victoria's Estate, given Raymond's then-existing status as a special administrator, with a conflict of interest, who had refused to pursue the claims pending against him in

#31101

Victoria's lawsuit at the time of her death. Whether Victoria's claims, many of which are now asserted in Paul's lawsuit, are meritorious has yet to be determined. Therefore, the motion for attorney fees cannot be properly decided until all the intertwined legal and factual claims in this lawsuit are resolved.